[No. 1026, August 31, 1905.]

RICHARD DI PALMA, and B. RUPPE, Plaintiffs in Error, v. JACOB WEINMAN, and JOSEPH BARNET, Defendants in Error.

### SYLLABUS.

1. Upon the testimony disclosed by the record the court erred in directing a verdict for the defendants.

Appeal from the district court of Bernalillo county, before Benjamin S. Baker, Associate Justice. Reversed.

O. N. Marron and McMillen & Raynolds, for plaintiffs in error.

Palma et al., v. Weinman et al.

An unauthorized trespass upon the lands of another, or unauthorized intermeddling with the goods of another is an actionable trespass.

> 1 Sutherland on Damages, p. 12, Ca. Ci.; 3 Stuherland on Damages, p. 364; Bishop Non-Contract Law, Sec. 819; Wood, Landlord and Tenant, p. 917.

There are no accessories in trespass; all are jointly and severally liable.

> Whitney v. Turner, 1 Scam. 253; Northern Trust Co. v. Palmer, 49 N. E. (Ill.) 555; Bishop on Non-Contract Law, Sec. 522 and Ca. Ci.; 1 Sutherland on Damages, p. 211; Lovejoy v. Murray, 3 Wall. 11.

When one makes a contract with another to do some act which when done necessarily invades the right of a third person, or injures his property, each of the contracting parties becomes liable to the one injured the same as though both had performed the act.

> Bishop Non-Contract Law, Secs. 522-604: Whitney v. Turner, 1 Scam. 253; Olsen v. Upsohl, 69 Ill. 273; City of Joliet v. Harwood, 86 Ill. 110; Florsheim v. Dullaphan, 58 Ill. App. 593; Jefferson v. Chapman, 27 Ill. App. 44; Water Co. v. Ware, 16 Wall. 566-576; Robins v. Chicago, 4 Wall. 679; Lovejoy v. Murray, 3 Wall. 11; Carman v. Stubenville, etc., 4 O. St. 399-418; Palmer v. Lincoln, 5 Neb. 136; Gorham v. Gross, 125 Mass. 234; Sturges v. Educational Society, 130 Mass. 414-415; Ellis v. Sheffield, etc., 2 Ellis & B. 767.

The doctrine of independent contractor does not protect the defendant.

> Bishop on Non-Contract Law, Sec. 604; Cooley on Torts (2nd Ed.) p. 644, & Ca. Ci.; Bower v. Peate, L. R. I. Q. B. D. 321; Stevenson v. Wallace, 27 Grat. 77; Wertheimer v. Saunders (Wis.) 37 L. R. A. 146; Chicago v. Robins, 2 Black, 426-427; Cristler v. Ott, 16 So. 416; Lawrence v. Shipman, 39 Conn. 586;

Dalton v. Angus, L. R. 6 App. Cas. 829; Snow v. Pulitzer, (N. Y.) 36 N. E. 1059.

Our code provides two kinds of answers, viz.: 1st. A general or specific denial. 2nd. New Matter. Code, Sec. 40. All matters not coming within these two heads are redundant and irrelevant and may be stricken out on motion. Code, Sec. 51.

Bliss on Code Pleadings, Secs. 316, 333 and 340; Pomeroy's Remedies, etc., Sec. 687, 673.

W. B. CHILDERS, for Weinman.

NEILL B. FIELD, for Barnett.

From the doctrine that the landlord is not liable to repair the demised premises, it follows that he owes to the tenant no obligation to protect, by reason of excavation upon an adjoining lot.

18 Am. & Eng. Ency. of Law 217.

In the absence of a covenant to that effect the lessees were not bound to repair or keep the premises in a habitable condition.

Howard v. Doolittle, 3 Duer, 464; Brewster v. De Fremery, 33 Calif. 345; Ward v. Fagin, 101 Mo. 669; 14 S. W. 738.

The duty of the party who avails himself of the right to build the wall, to exercise due care in building it, so as not to injure the buildings and property already upon his neighbor's estate, is not regulated by any agreement, and does not rest in contract, it is governed by the common law, and redress for any injury suffered by a failure in the performance of this duty, must be sought by action of tort.

Gorham v. Gross, (3 Lathorp); Glover v. Mensman, 4 Mo. Appeals 90; Orman v. Day, 5 Fla. 385; Klauder v. McGrath, 35 Pa. St. 128; Ketcham v. Newman, 141 N. Y. 205; 24 L. R. A. 102.

Barnett was not responsible for the loss. His contract was with an independent contractor. As to who is an independent contractor see.

Casement v. Brown, 148 U. S., 615 and 622; Steubenville & Indiana R. R. Company, 4 O. St. 399-414; Carbin v. American Mills, 27 Conn. 274; Wood on Master and Servant, p. 610 Par. 314; 16 Am. & Eng. Ency. of Law (2nd Ed.) p. 192; see also Robbins v. Chicago, 4 Wall. 557; Water Co. v. Ware, 16 Wall. 566; Chicago v. Robbins, 2 Black, 458; Morton v. Thurber, 85 N. Y. Court of Appeals 556-559.

NOTE.—This case was reversed, and on motion for rehearing counsel for defendant in error cited the following additional authorities.—Reporter.

Ency. Pl. & Pr. p. 372, Par. 4 and cases cited; Turner v. Fendall, 1 Cranch, 117; Gregg v. Moss. 14 Wall. 564; Cannon v. Pratt, 99 U. S. 516; Lancaster v. Collins, 155 U. S. 227; Lancaster v. Collins, 155 U. S. 227.

Where the finding of a trial court depends on the construction of a written instrument, the appellate court may review it.

2 Ency. Pl. & Pr. p. 407; United States v. Hodge; 6 How. 279; Sweeney v. Easter, 1 Wall. 166; Bell v. Bruen, 1 How. 169; Steele v. Spencer, 1 Pet. 552; Travelers' Ins. Co. v. Seaver, 19 Wall. 531.

## STATEMENT OF FACTS.

This is a suit for damages instituted in the district court of Bernalillo county by Di Palma and Ruppe, the plaintiffs in error, against Weinman and Barnett to recover damages in the sum of ten thousand dollars arising out of the destruction of a certain store building occupied by the plaintiffs as a drug store. The complaint alleges that the defendant Weinman was, on November 9, 1901, the owner in fee of the premises in question, and that on this date he leased said premises to the plaintiffs for a two years' term, beginning December 15, 1901; that at the time of the making of the lease and thereafter up to June 30, 1902, there was upon said premises a substantial store building, possession of which was given

plaintiffs by defendant, Weinman, on December 15, 1901, the first day of the lease, and was thereafter, up to June 30, 1902, occupied or used by the plaintiffs in their business of prescription and retail druggists; that on June 30, 1902, or thereabout, the defendants with full knowledge of the facts and "contriving to injure and destroy the property of the plaintiffs unlawfully entered upon said premises and with force and arms tore down and destroyed a large portion of the walls and roof of said store building so that the same fell upon, injured, broke and destroyed" personal property of the plaintiffs of the value of three thousand dollars and "so injured, wrecked and destroyed said building as to make it wholly unfit for plaintiffs' business;" and since said June 30, 1902, " said defendants have continued to occupy said premises and have wholly destroyed and torn down the rest of said building." Items of damages, illustrated by a bill of particulars, are alleged, aggregating ten thousand dollars, for which judgment is prayed.    The defendants answered separately.    The answer of defendant Barnett put in issue the alleged trespass by the defendants and the allegations of damages, and sets up that the falling of the wall of the building was by reason of the fact that said wall was old and of defective construction.    He further alleges certain facts not material to this decision, which, it is urged, estop plaintiffs from maintaining the present suit.    The answer of Weinman likewise puts in issue the material allegations of the complaint, except as to the destruction of the building, and avers that the lease in question became terminated on or about July 1, 1902, by the failure and refusal of plaintiffs to pay the rent stipulated.    The reply traverses the new matter alleged.    The cause was tried to a jury, and at the conclusion of plaintiff's case, upon motion of the defendants, the court instructed the jury to return a verdict for the defendants, which was done.    Plaintiffs moved for a new trial upon the grounds, *first,* of certain alleged errors of the court in refusing to admit evidence presented by the plaintiffs; *second,* for refusing to admit evidence as to the articles destroyed and their value, and *third,* in instructing the jury to find for the defendants.    The motion was overruled, judgment

entered for the defendants, and plaintiffs bring the case here by writ of error.

## OPINION OF THE COURT.

POPE, J.—(After stating the facts.)—The principal assignment of error is that based upon the action of the court in instructing the jury to find for the defendant. In determining this matter we do not find it necessary to enter into a discussion in detail of all the testimony given on the trial, but bearing in mind the rule as to directing a verdict laid down by this court in Armstrong, v. Aragon, 79 Pac. 291, and cases there cited, we think there was a case for the jury on the record here presented and that the court erred in withdrawing the case from the jury. The testimony in brief shows that the plaintiffs were in the quiet possession of the premises under a lease from the defendant Weinman, when, on June 30, 1902, the east wall of the building fell, the building thereon situated was untenantable and the stock and fixtures of the plaintiffs were damaged. It is further shown that some weeks prior to the casualty the defendant Barnett, who was the owner of lot one, adjoining the leased premises on the east, had entered into an agreement with Weinman (to which plaintiffs were not parties) whereby it was agreed, that Barnett in the construction of a building on lot one might construct a party wall on the west side thereof, to be located half upon his lot and half upon lot two occupied by the plaintiffs. This party wall contract was tendered in evidence by plaintiffs. but upon objection was held inadmissible by the court. This action of the court constitutes the bases for one of the assignments of error. It was further shown by the evidence, that pursuant to the party wall contract between himself and Weinman, Barnett on June 5, 1902, entered into a contract with one Grande. whereby the latter was to excavate for and complete the stone work required in the basement on lot one, including said party wall, in accordance with the plans and specifications of a certain Le Driere, the architect. This contract is in evidence, as are also the plans and specifications. From the latter it appears that the excavation was to be eight feet below the sidewalk grade and

the footing course of the party wall was to be forty inches
wide, one-half of which, or twenty inches, was to be on
lot two. The destroyed building came within two and a
half inches of the east side of the lot, so that the contract
was for an excavation of 17½ inches under the drug store
building. As a safe guard against the fall of the build-
ing by reason of such undermining, there was a provision
that the excavating should be done in sections, not over
five feet long, and there was also provision for the use of
timber props where necessary to protect properly the old
wall from settlement. It was under the contract, plans
and specifications thus outlined, that the contractor pro-
ceeded to excavate. Apparently the only excavation made
under the wall of the destroyed building was at the north
end of the east wall next to the sidewalk, where for a
depth of about eight feet and extending back southward
a distance of five feet an excavation was made under the
drug store wall, a distance variously estimated at from
three to eighteen inches. There was testimony to the ef-
fect that work was being done at this point on the very
day the building fell. The building fell about five o'clock
in the afternoon. The evidence seems to show that the
first indication of trouble was a vertical breach on the
top of the wall two or three feet long, about two inches
wide at the top and smaller as it extended downward,
this breach being about 55 feet south from the street and
this, fifty feet south of the most southerly point at which
the wall was undermined. Within ten minutes of the ap-
pearance of this breach the whole fifty-five feet of wall
northward had fallen, that to the south remaining stand-
ing. One of the eye witnesses, Sandoval, testifies, that
during the ten minutes interval some dirt and stones fell
from the top of the wall, the front part also cracked
and the stone foundation on the corner toward the north
side (being the corner of the undermining) fell in and
"the whole thing fell at once." Ruppe, the other eye
witness, testifies that during that interval he noticed the
sand trickling through the show window (at the north
front) from above and the show windows were pushed to
the front and five or six feet of the front of the wall
broke off and toppled over into the street with the front,

and the foundation fell in at this northeast corner. There is a difference between the witnesses as to just how the wall fell. Perhaps the more intelligent testimony was to the effect that the top of the wall fell inward and westward without shifting north or south and the bottom outward, but the testimony is contradictory upon this point. The proof shows, that at the northeast corner of the building, where the foundation had been undermined and subsequently fell in, there was located and destroyed an electric piano, which according to the bill of particulars filed, was worth $600, and there were a number of additional articles, at that point, of more or less value, also destroyed. The evidence also showed that the wall in question was not plumb but bagged westward as much as nine inches. One of the witnesses, Sandoval, a stone and adobe mason of fifteen years' experience, testified upon cross-examination, that the cause of the falling of the wall was the fact of its being undermined at the sidewalk. Plaintiffs attempted to present further testimony upon this line from one Hyden, who testified that he had been for eight years a contractor and builder, familiar with the construction of buildings, walls and foundations generally, and of this building in particular, and from one Pitt Ross, who testified that he had been a civil engineer for twenty years, familiar with the premises; but the court sustained the objection to this testimony, upon which action there is likewise an assignment of error. The theory upon which the defendants moved for and secured an instruction in their favor apparently was, that the physical facts as above outlined, rendered it impossible that the fall of the walls or any part thereof, could have resulted from the five foot undermining at the north end of the east wall. It is urged that the fact that the first breach in the wall appeared fifty feet back from the undermined section, and the manner in which the wall toppled and fell, exclude the idea that it could have resulted from the undermining, but established that it must necessarily have been caused by the removal of the lateral support formerly afforded by the wall of the building on lot number one, taken in connection with the fact that the east wall of the drug store was some inches out of

plumb. The wall on lot one, it may be remarked, had been taken down some three or four weeks before the fall of the building.

We are unable to concur in the view of the matter taken by the court below. We cannot say, as a matter of law, that the building could not have fallen for the reasons testified to by the witness Sandoval, to-wit, the excavation at its northeast corner, nor do we believe that it was within the province of the court below to withdraw the determination of the question of why it fell, from the jury. The facts of the case, in our judgment, bring it within the rule laid down in the much cited case of Milwaukee, etc., Railway Co. v. Kellogg, 94 U. S. 469, where it is said that "what is the proximate cause of an injury, is ordinarily a question for the jury," using their experience as business men, aided by expert opinion properly presented, it was for the jury to determine whether, from all the facts and circumstances disclosed in evidence, the theory of the plaintiffs was correct; or whether, as argued by the defendants, the first indication of trouble at a point in the wall fifty feet from the excavation was proof positive that the undermining had nothing to do with the fall of the wall. One of the witnesses for the plaintiff, a builder of experience with adobe walls, in effect testified, without objection, that such an excavation in a wall of this character could and did produce such a breach followed by such a fall. We are unable to say, as a matter of law, that this theory was incorrect. That was a question peculiarly for the jury. It was for the jury to determine whether, under all the proofs in the case, when tested by the charge of the court, the excavation under the northeast corner was the proximate cause of this damage to plaintiffs. We are further of the opinion that, while the court should have permitted the whole range of facts to go to the jury, it is even clearer that there were questions for the jury as to a portion of it, to-wit, that connected with the damage to the articles in the northeast corner of the building. The testimony shows that while a large portion of the articles along the east wall remained in place and were simply crushed down, the floor at the northeast corner, following the stone foundation, fell

into the excavation which had been made under the five feet of foundation at that corner. The result was damage to some very expensive articles at that point in the store, among others, as we have seen, a piano of very considerable value. Even assuming that the breach at the fifty foot point on the wall was the result of the removal of lateral support, that cannot be invoked in entire explanation of the falling in of the foundation at the northeast corner, and the very considerable damage resulting therefrom. As to this the jury would have been justified on the record here presented, in concluding that it flowed directly and proximately from the trespass upon the plaintiffs' leasehold in the undermining of their east wall. The fact that an element such as the removal of lateral support, with which defendants had no concern, co-operated with an element such as the unauthorized destruction of a foundation—with which the defendants had every concern—cannot relieve them from responsibility for the latter. The court below, considering the facts of the case to render unnecessary a consideration of the extent of damages, did not permit inquiry into the various articles destroyed, but enough is developed from this record to show *prima facie* a very substantial injury to plaintiffs by reason of the northeast corner excavation itself, and at the very least, that feature of the case should have gone to the jury under appropriate instructions. In the consideration of the case we have made no distinction between the defendant Barnett, the alleged active trespasser, and the lessor, Weinman, under whose authority and by whos consent it is alleged Barnett contracted for the alleged invasion of plaintiffs' leasehold. The extent to which Weinman stands upon the same footing as Barnett, depends upon the terms of his party wall contract. The latter was tendered in evidence and ruled out by the court, upon what theory we are unable to determine. Counsel for defendant Weinman, apparently abandoning any defense of this ruling, treats this contract as in evidence and argues quite fully upon its legal effect. We decline to follow this discussion or to hold at this time what the legal effect of that instrument is for the reason that these questions were not considered by the court below. The

trial court held simply, that the contract was inadmissible for any purpose and ruled it out, and so holding, presumably declined to consider its effect. We likewise content ourselves with passing upon its admissibility and reserve to the court below, upon a new trial, the determination of its weight. Holding, as we do, that this contract was highly relevant as showing the connection of the defendant, Weinman, with the alleged trespass, we are of the opinion that the trial court erred in excluding it from the jury.

The cause is accordingly reversed as to both defendants and remanded for a new trial.

William J. Mills, C. J., John R. McFie, A. J., Frank W. Parker, A. J., Edward A. Mann, A. J., concur.

Abbott, A. J., not having heard the argument took no part in this opinion.