LIMPERT ET AL. v. DAY ET AL., BOARD OF COUNTY COMMISSIONERS.
STUCKA ET AL. v. DAY ET AL., BOARD OF COUNTY COMMISSIONERS.
HESSENTHALER ET AL. v. DAY ET AL., BOARD OF COUNTY
COMMISSIONERS.
GRAHAM (LILLIAN D.) v. DAY ET AL., BOARD OF COUNTY
COMMISSIONERS.
GRAHAM (ROBERT A.) v. DAY ET AL., BOARD OF COUNTY
COMMISSIONERS.
BURMEISTER v. DAY ET AL., BOARD OF COUNTY COMMISSIONERS.
POTTER ET AL. v. DAY ET AL., BOARD OF COUNTY COMMISSIONERS.
MILLER v. DAY ET AL., BOARD OF COUNTY COMMISSIONERS.

(Nos. 664636, 664632, 664633, 664629, 664631, 664630, 664635 and
664634—Decided June 28, 1966.)

Probate Court of Cuyahoga County.

*Messrs. Walter & Haverfield, Mr. Jules Eshner, Mr. Loyal
V. Buescher, Mr. John T. Corrigan,* prosecuting attorney, *Mr.
A. M. Braun, Mr. John L. Dowling,* and *Mr. Richard A. Goulder,*
for case No. 664636.

*Messrs. Walter & Haverfield, Mr. Jules Eshner, Mr. Loyal V. Buescher, Mr. John T. Corrigan,* prosecuting attorney, *Mr. A. M. Braun, Mr. John L. Dowling* and *Mr. Richard A. Goulder,* for cases Nos. 664632, 664633, 664629, 664631, 664630, 664635 and 664634.

MERRICK, P. J. These cases are before this court on appeals perfected in accordance with provisions of Section 6117.09, Revised Code, granting right of appeal to this court from a spread of assessments by the Board of County Commissioners (hereafter referred to as Commissioners) in what has come to be known as the Westlake Sewer District. At the outset the court finds that the improvement is necessary and with the exception of one appellant is of benefit to the appellants and that the boundaries of the assessment districts are not fixed by any arbitrary, unreasonable or illegal action by the commissioners.

The court will direct its consideration to the claims that the assessments proposed exceed the benefits which would flow therefrom to the various parcels and that the same assessments are confiscatory and constitute a taking of private property without just compensation.

The above titled cases were consolidated and tried together. Later in this opinion, the assessment against each parcel will be considered separately and reviewed in accordance with the provisions of Section 6117.16, Revised Code.

The city of Westlake is located in County Sewer District 12 and comprises about 11,000 acres of land. The plan created by the commissioners is to sewer the city in three zones. Zone 1 is to be sewered by trunk, sub-trunk and local sewers. Zones 2 and 3 are not being sewered at this time; but will receive street service wherever the interceptor sewers are available. Zone 3 will require a pumping station. The cost of the present proposed installation is estimated at $16,600,000 and assessments have been spread over 8,780 acres. 1,865 acres in Westlake are not included and have not been assessed.

For the purpose of the assessment, zones have been created. Zone 1-A comprises all area within 200 feet of a sewered thoroughfare and the spread is $4,789.95 per acre. Zone 1-B comprises all area beyond 200 feet in parcels less than 500 feet in

depth and the spread is $1,197.47 per acre. Zone 1-C comprises all area beyond 1-A in parcels more than 550 feet deep and is assessed at $2,280.14 per acre. Zone 2-A is assessed at $575.52 per acre. Zone 2-B is assessed at $143.00 per acre and Zone 2-C is assessed at $430.69 per acre. It is unnecessary to examine Zone 3 as none of appellants' lands are in that zone.

The city of Westlake, following a survey, issued statements that it is contemplated that the city will be two-thirds developed by the year 1980 and estimates that if and when the sanitary sewers and the proposed Northwest Freeway are completed that the contemplated growth will add 280 new dwelling units per year.

In recent years, sewers, like highways have become of national concern. Now and for years raw sewage in the Westlake and surrounding areas has been finding its way into near-by Lake Erie. It is a matter of judicial notice that the lake is highly polluted to the extent that it has been a subject of local, state, national and international concern. Any method which reduces the pollution of Lake Erie will be of benefit to the health and welfare of millions of our citizens. The Ohio Water Pollution Control Board has ordered Westlake to install this sanitary sewer system and provide for disposal of raw sewage to the extent that it will accomplish complete abatement of the existing health hazards. These orders have been continued from time to time, awaiting the outcome of this and other litigation.

For a century in this country, the installation of streets, paving, sidewalks, water and sewer have been a burden to be assumed by the directly benefited property owner, usually contiguous to the proposed improvement. In recent years it has come to be an established fact that street improvements which were to be used by others than the abutting owners should be paid for at least in part by the general public. It would be untenable to contend that our super-highways, local and interstate, should be paid for by the abutting property owners. Now these highways are constructed and maintained by local, state and national government funds raised by taxing the general public.

The disposal of sewage in the area including Westlake is of general benefit in that it will decease the pollution of Lake Erie and creeks and rivers flowing into such lake. Surely, this is for

the betterment of the health and welfare of thousands and millions far away from the immediate problem of Westlake's property owners. While this court has no jurisdiction to spread the assessments beyond the parcels represented by the cases on appeal, in equity and justice, the situation should be pointed up to all those benefited, directly or remotely.

There are 5,555 parcels of land in the Westlake sewer district covered by this assessment. While only 16 parcels are involved in this appeal, this very small group of objectors should not be burdened with any consideration being given to the fact that the overwhelming majority are satisfied with the assessments. Certainly there are some unusual situations and problems confronting the appellants in attempting to determine whether the assessments will bring the dollar benefits necessary to justify any taxing of this type.

The fundamental principle underlying the imposition of special assessments on property for a public improvement is that the property is specially benefited and should bear its proportionate cost thereof corresponding to such benefit. *Walsh* v. *Barron, Treas.,* 61 Ohio St. 15; *Domito* v. *Maumee,* 140 Ohio St. 229. When a special assessment is materially in excess of the benefits conferred or substantially unequal thereto, no advantage accrues to the owner and the special assessment loses its justification. It thereupon invades the inviolability of private property and contravenes the provisions of *Section 19, Article I of the Constitution. State, ex rel. Shafer,* v. *Otter, Surveyor,* 106 Ohio St. 415; *Baxter* v. *Van Houter, Auditor,* 115 Ohio St. 288; *Domito* v. *Village of Maumee, supra.*

In examining the assessments it is readily apparent that the spread per acre was applied as a yardstick according to the classification in which the land had been placed without any regard to the length, breadth, type of terrain or other inherent factors which might otherwise affect the value of land. For example, a long narrow stretch of land was assessed on an acreage basis the same as a wide square stretch. It must be noted that the terrain and shape greatly affect land values. This will be discussed later in this opinion.

The term "benefit," as regards validity of improvement assessments, does not mean simply an advance or increase in mar-

ket value, but embraces actual increase in money value, and also potential or actual or added use and enjoyment of the property. *Prentice* v. *City of Toledo,* 11 C. C. (N. S.) 299; *Mc-Maken* v. *Hayes,* 10 C. C. (N. S.) 38, affirmed in 78 Ohio St. 412; *Rice* v. *Danville,* 36 Ohio App. 503.

The application of a foot-front rule or other rule based on the fact that the property abuts or is close to the proposed facility standing alone, is not in and of itself the correct or incorrect method of assessment. If it appears that the application of such rule results in substantial or at least a rough approximation to apportionment according to special benefits, or constitues as close an approximation thereto as could be attained by any other method of apportionment, it should be sustained. But if the principle of benefit is disregarded or ignored, an assessment arbitrarily made on a frontage or other all inclusive basis resulting in an amount materially in excess of the benefits conferred is invalid. *Laskey* v. *Hilty,* 91 Ohio App. 137.

The issue presented in these appeals is whether the assessment substantially exceeds the benefits conferred upon appellants' properties by the improvement. The principle underlying special assessments is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. It has been held that if the land in front of which water pipes are laid is farm land, it cannot be assessed according to the front-foot rule. *Laskey* v. *Hilty, supra,* page 149. There is a distinction between applying the front-foot rule upon compact city lots, where the properties do not materially differ in value, and applying the rule to rural or suburban districts. *Seely* v. *City of Pittsburgh,* 82 P. 360, 22 Am. Rep. 760. This court is of the opinion that the foot-front rule falls in the same category as a per-acre rule.

An assessment for sewers that ignores the difference in value between an immediate opportunity of use and a use that is prospective only is arbitrary and discriminative and cannot be sustained. It is manifest that a benefit that is necessarily prospective is not of equal value with a benefit immediately enjoyable, and that it is an abuse of the power of assessment that overlooks that difference *Daehler* v. *Portsmouth,* 45 Ohio App.

21. However, land is not completely exempt because it is entirely unimproved and there is no immediate need for such drainage. Vacant lots and lands may, and usually do receive a present special appreciable benefit from the construction of a sewer in proximity with, and accessible by them for sewage purposes, sufficient to sustain an assessment made on the basis of benefits. Consideration must be given to the situation and condition of the lands concerned. *Ford* v. *City of Toledo,* 64 Ohio St. 92 and page 99.

In assessing benefits in sewer cases, consideration should be given to the fact that it might be years before there is any occasion for property to be connected with the sewer, and before, therefore, any actual benefits can accrue to the property by reason of the improvement. Consideration should also be given to the fact that the owners would be subject to great additional expense, whenever, if at all, they found it desirable to develop their property and avail themselves of this facility. This principle was followed by the Circuit Court of Cuyahoga County in *Munz* v. *Myers, Treas.,* 23 C. C. (N. S.) 190 and affirmed without opinion in 90 Ohio St. 383.

While no case has been cited by counsel and none found by the court, it seems quite elemental that the chance, opportunity, proximity or other factor that would make it possible for a property owner to join with his neighbor, or neighbors, in forming a so-called ''assemblage'' in order to give his property added value, deserves no consideration in these cases. This theory is highly speculative and places the burden upon the owner to seek association or partnership with another, or others, before his land would attain a substantial increment in value because of the sewer improvement. There is no rule of law that would require one person to contract with another in an assemblage of property, even though it might be to great mutual advantage. A more reasonable approach to the question of best possible use is a determination of what can be done with the property by improvements which are reasonably attainable and which can enhance the value under all present circumstances or those foreseeable in the very near future.

This court in the decisions as to the various parcels contained in this litigation does not in any manner intend by any

judgment to make it possible for any appellant to unjustly enrich himself as a result of such judgment. In the cases in which the court has reduced the assessment because of the present layout, location or condition of the parcel, jurisdiction of this court is retained and continued and the subject matter will be re-examined and the judgment re-opened in the event that the owner, in combination with another or in assemblage with other property, further enhances the value of any parcel herein being considered. This shall also apply to any lessee or successor in title who engages in like activity or conduct. While the statute is not specific in granting this continuing control, the application of rules of equity under the provisions of Section 6117.32, Revised Code, afford this authority to the court.

This opinion shall constitute and be considered as a separate finding of facts and conclusion of law.

APPEAL No. 664636

This involves seven parcels owned by Carl M. Limpert, Herbert J. Limpert and Julia M. Limpert. While all parcels are not contiguous, separate consideration will be given to each. The identity will be by Permanent Parcel numbers.

Permanent Parcel Number 212-19-5.

Consists of approximately 6.78 acres on the south side of Detroit Road. The assessment split the parcel into 1.487 acres in Class 1-A and 5.299 acres in Class 1-C. It is zoned for multifamily building to a depth of 300 feet and residential for the balance. It has a frontage on Detroit Road of 324 ft. All improvements are in except sanitary sewer.

According to the experts for the commissioners, one use would be to build a 40 suite apartment on the front land and run a street back to provide 10 building lots. The same experts testified that the best use would be to assemble with adjoining property as a development of 40 suites and 10 lots might not be too profitable. The assessment is $19,205.11. An expert for the commissioners stated the improvement brought by sanitary sewers would increase the value by $16,100.00; the other expert for the commissioners used an increase in value figure of $16,600.00. The witnesses for the owners used an increase in value figure of $5,650.00. Obviously these estimates render the assessment as confiscatory.

To create a small allotment in the rear of any proposed apartment building would require the use of 60 to 100 feet of frontage for a street which would afford access to the area in the rear which would be sufficient only for the creation of 10 building lots of the size required by the zoning.

Taking into consideration all factors, the assessment is confiscatory and void, but in the opinion of the court should be reduced to $10,000.00 and in such amount approved.

Permanent Parcel Number 212-20-1.

Consists of 31 acres between Detroit and Hilliard roads in Class 1-C, zoned residential. This land has no frontage on any road or street but is contiguous to a narrow strip of land which is owned in the family (Permanent Parcel No. 212-28-4) and is 81 feet wide and runs to the north side of Hilliard Road which crosses on a sharp angle creating 148 ft. of frontage on Hilliard Road. This narrow strip, even if assembled with this parcel would not provide such access as would permit the creation of an allotment without assemblage with lands of other owners.

This land is zoned for single family residences. Both experts for the commissioners based their opinions that sewers would increase the value on the possibility of assemblage with other property. This is farm land and cannot be used for any purpose as it stands alone. The experts for the commissioners fixed an increase due to sewers at $95,200 and $102,300 respectively, but each qualified his figure was the assemblage theory. The owners' witness testified the increase in value would be $9,300. The assessment is $70,684.34.

Taking into consideration all factors, the assessment is confiscatory and void; but in the opinion of the court should be reduced to $20,000 and in such amount approved.

Permanent Parcel Number 212-28-4.

Consists of .529 of an acre and is the narrow lot referred to in the finding as to the parcel immediately preceding. Unless assembled this is a single lot, zoned for residential purposes. The experts for the commissioners placed an increment in value due to sewering at $3,400 and $2,950, respectively, qualified by the theory of assemblage. The owners' witnesses used a figure of $1,100. The assessment is $2,533.88.

Taking into consideration all factors, the assessment is con-

fiscatory and void, but in the opinion of the court should be reduced to $1,500 and in such amount approved.

Permanent Parcel Number 212-20-7.

Consists of 1.68 acres without frontage on any road or street, classed 1-C. It is contiguous to property which is owned by the family but would add little value if used therewith unless assembled with the land of others. This is vacant rear land, 1,230 feet from Hilliard Road. The experts for the commissioners both testified its value depended on assemblage with property owned by the family and other lands and if so used would have an increment in value because of sewers of $4,600 and $5,150, respectively. Witnesses for the owner placed the increase at $500. The assessment is $3,830.58.

Taking into consideration all factors, the assessment is confiscatory and void, but in the opinion of the court should be reduced to $750 and in such amount approved.

Permanent Parcel No. 212-20-3.

Consists of 18.577 acres fronting 410 feet on the north side of Hilliard Road. Approximately 2½ acres are in Class 1-A and 16 acres in Class 1-C. All improvements, other than sewer, are in Hilliard Road. It is zoned single family with a minimum requirement of 75 by 200 feet per lot. This could be made into a small allotment. Both experts for the commissioners testified it could be more valuable in assemblage with other land and placed an increment value at $54,000 and $54,200, respectively. It is assessed at $48,753.15. The same experts testified that if not assembled with other lands the increment would be $38,000 and $32,000, respectively. The owners' witnesses fixed the increment at $10,900.

Taking into consideration all factors, the assessment is confiscatory and void, but in the opinion of the court should be reduced to $15,000, and in such amount approved.

Permanent Parcel No. 212-28-5.

Consists of 1.416 acres on the south side of Hilliard Road. Irregular in shape, it is possible that two residential lots might be platted from this property but would be best used in assemblage with other land. The commissioners' experts based their valuations on foot frontage value and fixed the increment due to sewering at $6,200 and $7,350, respectively. The owners'

witnesses fixed a figure of $1,900. The assessment is $6,067.67.

Taking into consideration all factors, the assessment is confiscatory and void, but in the opinion of the court should be reduced to $3,500 and in such amount approved.

Permanent Parcel No. 215-14-17.

Consists of 10.824 acres on the south side of Dover Road. 2.1 acres are in Class 1-A and 8.7 acres in Class 1-C. It is 439 feet front and has parallel side depths of 1,090 feet. This is a fine piece of property in a good location and could be developed without assemblage. The opinions of the commissioners' experts should be questioned to a slight degree because they considered proximity to a present existing subdivision to the north. They placed the increment due to sewering at $30,000 and $34,200, respectively. The assessment is $29,537.31. All improvements except sanitary sewers are in Dover Road.

Taking into consideration the factor used by the witnesses in considering the proximity of this land to a presently existing subdivision owned by others than the appellants, the assessment is reduced to $25,000 and in such amount approved.

APPEAL No. 664632.

This involves a parcel of land owned by J. and C. Stucka. The identity will be by Permanent Parcel No. 212-20-2.

Consists of 13.234 acres without frontage on any road or highway. There is an easement right in the owner over adjacent land owned by others. This allows ingress and egress by way of an unimproved driveway 10 feet wide to Detroit Road. There is an old farm house on the property with outside sanitation. Entire parcel is in Class 1-C. There is not enough width to develop for any purpose even with assemblage of contiguous property which fronts on Detroit Road. It cannot be used alone for anything but farming. The opinions of the commissioners' witnesses were based solely on the possibility of assemblage. They fixed the increment in value due to sewering at $19,600 and $29,900, respectively. The owner's witnesses fixed the increment at $4,000. The assessment is $30,179.93. This shows the flagrant error which can be made in using a per acre yardstick without regard to location, size or terrain.

Taking into consideration all factors, the assessment is con-

fiscatory and void, but in the opinion of the court should be reduced to $7,500 and in such amount approved.

## APPEAL No. 664633

This involves a parcel of land owned by Julius and Elizabeth P. Hessenthaler. The identity will be by Permanent Parcel No. 215-14-26.

Consists of 3.716 acres on the east side of Dover Center Road. All improvements are in except sanitary sewer. The parcel has 125 feet frontage and is 1320 feet deep. In the real estate trade this type of land is known as "bowling alley." There is a deep drainage ditch across the width of this land of such a nature that if used the land would require a culvert to cover the ditch and waterflow. There is in the front .574 of an acre in Class 1-A and the rear contains 3.142 acres in Class 1-C. There is a two story substantial residence on the front with 5 bedrooms and other incidental rooms and conveniences, including a two car garage. This is another example of the fallacy of using the per acre system of assessment without contemplating the cost of putting the land in shape for any better use. The commissioneres' experts both testified that the best use of this land would be in assemblage, with adjoining land not owned by appellant and using this factor estimated the increment due to sewering to be $10,600 and $11,300, respectively. The owner's witnesses estimated the increase at $2,000. The assessment is $9,913.63.

Taking into consideration all factors, the assessment is confiscatory and void, but in the opinion of the court should be reduced to $5,000 and in such amount approved.

## APPEAL No. 664629

This involves a parcel of land owned by Lillian D. Graham. The identity will be by Permanent Parcel No. 212-26-5.

Consists of 8.351 acres with a frontage of 277 feet on the west side of Dover Center Road and of irregular depth, 875 feet on one side and 890 feet on the other. There is a single house containing five bedrooms and two baths. There is a tile barn. There is an institution for aged nearby on one side and a school nearby on the other side. The assessment places 1.271 acres in Class 1-A and 7.080 acres in Class 1-C. The experts tes-

tifying for the commissioners stated that the best use would retain the present residence and a lot around it and cut out two additional lots on the road frontage and that the rear land would be enhanced in value only if used in assemblage with lands owned by others. They stated the increment due to sewering would be $20,800 and $25,400, respectively. The owner's witnesses fixed the increase at $5,750. The assessment is $22,233.93.

Taking into consideration all factors, especially the necessity of using the rear acreage in assembly, the assessment is confiscatory and void, but in the opinion of the court should be reduced to $10,000 and in such amount approved.

APPEAL No. 664631

This involves a parcel of land owned by Robert A. Graham. The identity will be by Permanent Parcel No. 212-26-8.

Consists of a lot roughly 500 plus feet wide and 2,000 feet deep with an indented area on one side and a corner fronting 60 feet on Hilliard Road. There are no structures, no water, sidewalk or other utilities and is used for farming. The assessment places 1.117 acres in Class 1-A and 22.574 acres in Class 1-C. It is contiguous to the parcel owned by another Graham and discussed directly before this one in this opinion. It is presently only used for farming. It is a "bowling alley" type of parcel. The experts for the commissioners both testified that their opinions were based on the theory of assemblage with other land and gave opinions of the increment due to sewering of $79,500 and $85,900, respectively. The owner's witnesses estimated the increase at $7,100. The assessment is $56,822.25. This is another example of the rule of thumb per acre method going far afield in calculating benefits not available without merging with other owners.

Taking into consideration all factors, especially the necessity of assemblage, the assessment is confiscatory and void, but in the opinion of the court, should be reduced to $15,000 and in such amount approved.

APPEAL No. 664630

This involves a parcel of land owned by Elinor E. Burmeister. The identity will be by Permanent Parcel No. 212-30-4.

Consists of a parcel of land on the north side of Center Ridge Road. All improvements except sanitary sewer are avail-

able. Across the road is zoned for a shopping center. There is approximately 370 feet frontage on Center Ridge Road with irregular depths of 722 feet and 563 feet. The rear is 323 feet wide. The rear is very low and swampy. There is a single house in the rear portion. Much filling and draining will have to be done in the rear land to make it available for any future use. This is a very good location and land with much potential. The zoning is multi-family for 300 feet of depth and single residential in the rear. The assessment divides it nearly 50-50 in Class 1-A and Class 1-C. The experts testifying for the commissioners placed the increment due to sewering at $12,500 and $15,250, respectively. The owner's witnesses fixed the figure at $5,900. The assessment is $15,655.28.

Taking into consideration all factors, especially the condition of the rear land, the assessment is confiscatory and void, but in the opinion of the court, should be reduced to $9,000 and in such amount approved.

APPEAL No. 664635

This involves a parcel of land owned by Josephine Potter, Lloyd Hurst and Harold Hurst. The identity will be by Permanent Parcel No. 212-14-3.

Consists of a parcel of approximately 8 acres of which one building lot is occupied by a tavern. This is in the name of Josephine Potter. The remainder of the acreage is owned by Lloyd and Harold Hurst. The entire parcel fronts 204 feet on Detroit Road. The rear width is 295 feet. The depth on one side is 886 feet and on the other side 1,228 feet. The zoning is for multi-family for 300 feet of depth and single family for the remainder. The terrain drops off sharply from Detroit Road. To make the land available for the best possible use, exclusive of the tavern would be to grade and fill so that an apartment house could be built on the first 300 feet and a street cut through to create building lots in the rear. The assessment is $23,119.19. One expert for the commissioners testified that such land would be improved by the installation of sanitary sewering and increased in value to the extent of $35,000. Another expert for the same reason stated that the increase would be $27,300. The owners' witness stated it would be increased in value by $4,750.

To make the improvement necessary to justify the increases

would cost thousands of dollars for grading and filling and for that reason, the assessment is too high.

Taking into consideration all factors, the assessment is confiscatory and void, but in the opinion of the court should be reduced to $15,000 and in such amount approved.

APPEAL No. 664634

This involves a parcel of land owned by Leonard Miller. The identity will be by Permanent Parcel No. 211-19-9.

Consists of land one-half mile away from the closest availability of the proposed sewer system. This owner has been assessed in the original Rocky River Sewer District on the theory that service from that unit would make it possible for this parcel to be serviced when and if an extension or addition brought the parcel into the possibility of use of the Rocky River facility. This court is of the opinion that extending the system but falling one-half mile short of opportunity of use or present availability should not approve an assessment that affords the owner no more service than he is now receiving. If and when the sewer system is extended to the point where this owner may avail himself of its use, then he can be additionally assessed. He cannot be made to pay twice for the possible availability in the future. The assessment is $4,297.59.

Taking into consideration all factors, especially the fact that the owner is paying a previous assessment for future availability only, this entire second assessment is confiscatory and void.

Judgment is rendered for costs in all these cases against the Board of County Commissioners.

*Judgments accordingly.*