ARVIDSON *v.* BOARD OF COUNTY COMMISSIONERS.
RAFFA *v.* BOARD OF COUNTY COMMISSIONERS.

[Cite as Arvidson v. Bd. of County Commrs. (1971), 27 Ohio Misc. 93.]

(Nos. 39947 & 39948—Decided May 3, 1971.)

Probate Division, Common Pleas Court of Ashtabula County.

*Messrs. Warren & Young, Messrs. Sheldon & Warren* and *Messrs. Nicholson & Tittle,* for plaintiffs.
*Messrs. Squire, Sanders & Dempsey* and *Mr. Robert D. Webb,* prosecuting attorney, for defendants.

HENDERSON, J. (By Assignment.) These are appeals under R. C. chapter 6117, and specifically R. C. 6117.251, from a resolution of the Ashtabula County Board of Commissioners levying special assessments to pay for the preparation of plans and specifications, cost estimates, tentative assessment computations and legal and financing costs for the construction of proposed sewerage and waste water treatment facilities. The assessment is a prelimin-

ary one specifically limited to these preliminary expenses, by authority of R. C. 6117.251, and does not purport to provide any funds, land acquisition or construction costs. Had the commissioners chosen to proceed under R. C. 6117.06, as they had the option of doing, the assessments would have included the construction costs for the improvement. The appeals have been filed with this court under R. C. 6117.09. The area involved is known as Section 9 of Sewer District No. 2, being primarily of residential character with some 1500 inhabitants, and being located upon the south shore of Lake Erie, immediately to the west of the city of Ashtabula in Saybrook Township, Ashtabula County, Ohio. The area does not now have treatment facilities and utilizes a communal septic tank.

On March 12, 1968, the Ohio Water Pollution Control Board ordered the commissioners to proceed to build sewerage and waste water treatment facilities in the district, and forbade any sewer connections or extensions or new construction until the building of the required facilities. The commissioners hired the engineering firm of Burgess & Niple to make a report of studies and recommendations. At about the same time the commissioners held the first of several informal conferences with various officials of the city of Ashtabula to explore the possibility of connecting the sanitary sewers of District No. 2 with the sewage treatment plant of the city of Ashtabula, then operating at about one-half capacity. Such arrangement would obviate the necessity of the construction of a separate treatment plant for District No. 2. The commissioners were unable to obtain permission from the Ashtabula city authorities to make the connection without the annexation of the area to the city. On September 3, 1969, Burgess and Niple submitted their report on Waste Water Collection and Treatment for Sewer District No. 2. The report recommended the collection and treatment of the sewage by one of two basic methods: Alternate I, by the construction of a treatment plant on the western boundary of the district; and, Alternate II, by the pumping of the sewage into the treatment plant of the city of Ashtabula. The estimated cost of construction under

Alternate I was $1,600,000.00, and the estimated construction cost under Alternate II was $1,235,000.00. The report recommended that the commissioners explore the possibilities of negotiating a mutually satisfactory agreement with the city for sewer service, and then to adopt one of the alternate plans based upon the results of the negotiations.

Thereafter, further inquiries of Ashtabula city officials about connecting with the city's treatment plant proved fruitless and the commissioners were advised again that this would be permitted only upon annexation. On December 8, 1969 the commissioners adopted a resolution approving a general plan for sewerage and sewage disposal for the district and in it incorporated and adopted Alternate I, for the construction of a separate treatment plant. The commissioners then proceeded to implement the general plan by the holding of hearings and the adoption of the required resolutions throughout the year 1970. Burgess and Niple proposed a Computation of Tentative Assessments For Planning by which the planning and preliminary financial and legal costs, in a total estimated amount of $125,000.00 were allocated against the properties in the district in proportion to the allocation of the total project costs. Finally, after an annexation petition, circulated through the district, failed for an insufficient number of signatures, the commissioners on December 7, 1970, passed the resolution levying the assessments from which the appeals in this proceeding were taken.

R. C. 6117.09, under which the appeals to this court are authorized, provides in part as follows:

"Any owner of property to be assesesd or taxed for an improvement under R. C. 6117.01 to 6117.45, inclusive, or R. C. 6103.01 to 6103.30, inclusive, may appeal to the probate court from the action of the board of county commissioners in determining to proceed with the improvement in regard to any of the following matters:

"(A) The necessity of the improvement, including the question whether the cost of the improvement will exceed the benefits resulting therefrom;

"(B) Boundaries of the assessment district;

"(C) The tentative apportionment of the assessment."

The plaintiffs base their appeals upon two grounds: first, the special assessments in this case under R. C. 6117.-251 are void in that they are special assessments upon the properties of the plaintiff without the conferring of any special benefits at all in violation of Section 19, Article I of the Ohio Constitution; and, second, the county commissioners abused their discretion by failing to adopt the alternate plan of treating the district's sewage by connecting with the treatment plant of the city of Ashtabula.

The reasoning of plaintiffs' position that an assessment under R. C. 6117.251 is unconstitutional is that the completion of plans and preliminary engineering for an improvement cannot without the construction of the improvement be of any benefit to the property assessed. The following quotation from counsel's reply brief summarizes their contention:

"The crux of the issue here is that proceedings by the County under R. C. 6117.251 assesses and terminate without conferring any benefit upon the property being assessed. Proceedings under R. C. 6117.06 assesses and terminates with the actual installation of the desired improvement, and thus confer an actual benefit upon the assessed property." (p. 2)

Section 19 of Article I of the Ohio Constitution provides:

"Private property shall ever be held inviolate, but subservient to the public welfare." "—where private property shall be taken for public use, a compensation therefor shall first be made in money—."

The following limitation of the Constitution was set forth in early Ohio cases:

"If a sum is exacted in any instance in excess of the value of the special benefits conferred, it is, as to such excess in that instance private property unjustly taken for public use without compensation to the owner." *Ry. Co.* v. *Cincinnati*, 62 Ohio St. 465, 57 N. E. 229 (1900), at p. 474. See also, *Chamberlain* v. *Cleveland*, 34 Ohio St. 551 (1878).

A purported assessment for a public improvement lev-

ied against private property which is equal to or greater than the value of the property after the improvement is made constitutes the taking of property for public use without compensation in contravention of Section 19, Article I of the Ohio Constitution. *Domito* v. *Maumee*, 140 Ohio St. 229, 42 N. E. 2d 984 (1942). The fundamental principle underlying an assessment made on property is that the property is specially benefited by the improvement beyond the benefits common to the public. *Walsh* v. *Barron*, 61 Ohio St. 15, 55 N. E. 164 (1899). The term "benefit," with respect to the validity of special assessments, means an actual increase in money value, and a potential or actual or added use and enjoyment of the property. *Limpert* v. *Day* (P. C., Cuyahoga, 1966), 7 Ohio Misc. 231, 218 N. E. 2d 209; *Rice* v. *Danville* (C. A., Knox, 1930), 36 Ohio App. 503, 32 Ohio Law Abs. 495. The underlying theory is that the special benefits received are in remuneration of the special assessments levied. 49 Ohio Jurisprudence 2d, Special Assessments, Sec. 7, p. 243. Where an assessment is levied upon property for a public improvement, and no benefit, present or potential, accrues to the property assessed by reason of the improvement, the assessment is void *ab initio*. *Falor* v. *Mong* (C. A., Summit, 1934), 47 Ohio App. 442, 17 Ohio Law Abs. 291.

R. C. 6117.251 is a relatively new enactment (1957) and the above cases and the many others in Ohio upon the subject of the constitutional limitation upon the power to levy special assessments all appear to involve the effect of assessments which include the entire construction costs of improvement projects. The contention of the plaintiffs in this case appears to reflect this circumstance with the conclusion that there must be a physical improvement, the construction of which has been included in the resolution of assessment by the legislative authority before there can be any benefit to a property assessed. The plaintiffs have not questioned the allocation of the benefits to their properties; they maintain that plans, engineering and other preliminary work cannot in themselves constitute legal benefits. Counsel for neither side has submitted any au-

thorities which appear to be directly in point, and the question appears to be one of first instance in Ohio.

There is authority outside Ohio sustaining the validity of special assessments upon property to pay preliminary expenses only for public local improvement projects which have been abandoned and never completed. The following is from the text in 48 American Jurisprudence, Special or Local Assessments, Sec. 53, p. 607.

"Preliminary expenses of an improvement which after due study is abandoned or not undertaken can be assessed against property within the improvement district or area which, with proper authority, undertook such study. The assessment of such preliminary expenses need not be based upon special benefits accruing from a completed plan. One is not deprived of his property without due process of law by the imposition upon it of an assessment for the preliminary expenses of an abandoned improvement, although the assessment exceeds the amount of benefit which the assessors estimated the property would receive from the completed work. In making such an assessment, it is not material to consider whether the area of the district might subsequently be **extended, or what** particular lands within it would be appropriated for the construction of the improvement."

In the case of *Railroad Co.* v. *Western Crawford District* (1924), 266 U. S. 187, 69 L. Ed. 237, the court held that a special assessment might be levied for a special road improvement abandoned after preliminary publication and inquiry without violating the Fourteenth Amendment to the United States Constitution. At page 190, the court said:

"So far as concerns the Federal Constitution, the validity of the tax may be rested, also, on other grounds. A State may defray the cost of constructing a highway, in whole or in part, by means of a special assessment upon property specially benefited thereby. But it is not obliged to do so. Road building is a public purpose which may be effected by general taxation. The cost may be defrayed out of state funds; or a tax district may be created to meet

the authorized outlay. The preliminary inquiry whether it is desirable to construct the road, is one in which all landowners within the district are interested. The Fourteenth Amendment does not require that taxes laid for this purpose shall be according to the benefits to be received by the person or thing taxed. The cost of making the investigation may be met by a fixed charge per acre, * * * or by distributing the cost over all the land in the district in proportion to its value as assessed for county and state taxation, or otherwise. The fact that the money to be raised by this tax will be applied toward defraying the expenses of an abandoned road project, and not to the cost of a road wholly or partly completed, is obviously immaterial. * * * There is here no suggestion of that flagrant abuse or purely arbitrary exercise of the taxing power against which the Federal Constitution affords protection."

In the case of *Houck* v. *Little River Drainage District* (1915), 239 U. S. 254, 60 L. Ed. 266, the court held that special assessments for preliminary expenses of an improvement did not violate the due process clause of the Fourteenth Amendment to the United States Constitution. Although, again, the decision is not entirely in point, the following quotation from the court's opinion, beginning at page 265, is of interest in this proceeding:

"It was not necessary to base the preliminary tax upon special benefits accruing from a completed plan. It cannot be denied that the preliminary work had peculiar relation to the district. The initial inquiry, whatever its result, was for the purpose of securing the reclamation of the lands of which the district was comprised. In this inquiry, all the owners were interested. Whether the expense of ascertaining the best method of reclamation should subsequently be reimbursed when final assessments were laid according to benefits ascertained to result from the execution of the final plan presents a question of policy and not of power. These outlays for organization and preliminary surveys could as well be considerd specially to concern the district, as constituted, as highways or public buildings or plans for the same (whether consummated or aban-

doned) could be said to concern counties or towns. Further, it would seem to be clear that the State could appropriately provide for meeting the preliminary expense when it was incurred and could determine the manner of apportionment according to the interests deemed to be affected as they existed at the time. And in this view, it is not material to consider whether the area of the district might subsequently be extended, or what particular lands within it would be appropriated for ditches, reservoirs, etc., if a plan of drainage were adopted and carried out. To say that the tax could not be laid except as a result of such an inquiry would be to assert in effect that as a preliminary tax it could not be laid at all. We know of no such limitation upon the state power."

In the case of *Northern Pacific Ry. Co.* v. *Pierce County* (1908), 51 Wash. 12, 97 P. 1099, the court upheld the validity of an assessment upon lands in a drainage district for preliminary work for an improvement abandoned because the preliminary studies showed that the benefits from the improvement would not exceed the costs. In *Fidelity National Bank & Trust Co.* v. *Morris* (1929), 127 Kans. 283, 273 P. 425, the court upheld a special assessment to defray the costs of engineering studies upon the basis of which the proposed project was abandoned. Although the constitutional question is not specifically discussed, the following portion of the court's opinion on page 426 seems pertinent:

"How shall that tax be levied? The statute does not specifically provide for the situation that is now presented to the court. The statutes provide that taxes shall be levied according to benefits received. No drainage system has been constructed. No benefits have been received from its construction. Whatever benefits have been received by land within the district have been received from the survey and report of the engineer, the rejection of his report, and the determination to abandon the project. Those benefits, whatever they were, have been received by all the land within the district, valuable more than land of less value. It follows that in any effort to be obedient to the law the tax to pay this indebtedness should be a percentage tax levied on

all the land in the district according to its value in money."

Section 19, Article I of the Ohio Constitution, the limitation upon special assessments, of course, makes no specific mention of improvements or assessments for them. It rather speaks in terms of the inviolability of private property and the compensation which must be made for property taken. The yardstick of the constitutionality, of special assessments according to Ohio case law, is the relative value of the assessment and the special benefit therefrom. The common denominator of the decisions is that the assessed property must receive its money's worth.

With respect to this proceeding, the preliminary engineering, financial and legal work is clearly of a necessary and beneficial nature. It is of no benefit to anybody except the property owners in District No. 2. It benefits them in that it is the first step in complying with the order of the Ohio Water Pollution Control Board, and thus one step closer to the completion of the project and the lifting of the existing prohibition against new sewer connections and new building construction. To the properties in the district it means an "increase in money value, and a potential or added use and enjoyment of the property." Prospective purchasers of land in the district will know that work is under way to bring the district up to modern sanitation requirements, a knowledge that will support sound property values. The owner of each parcel in the area will have a singular investment in the detailed plans and preliminary work for the project which will be of special benefit, and as far as the evidence in this case demonstrates, of equal benefit to his property. It is clear, of course, that the benefits of the preliminary work are not nearly as great as those of the completed improvement. But then neither are the assessments nearly as great. The estimated cost of the preliminary work assessed is $125,000.00, while that of the whole project is $1,600,000.00, a ratio of about 13 to 1. The assessment for the plans and other preliminary work in question here is an assessment for the cost of the improvement *pro tanto*. The evidence does not show, and the plaintiffs do not contend that the total amount of the

preliminary assessment is excessive, or that it imposes inequitable burdens upon individual property owners. The property owners would seem to be getting their money's worth, and a fair remuneration or compensation from their assessments.

There does not seem to the court to be any particular significance in the observation of counsel that the assessments are being imposed in two separate stages, and that the second or construction stage, for which assessments have not yet been made, may never materialize. This, of course, is possible despite the commissioners' having adopted a general plan for the construction of the complete facilities. But while such a turn of events would obviously be detrimental to the properties in the district and depreciative of the preliminary benefits theretofore received, it would not seem to be relevant to the question of whether the preliminary benefits were the *quid pro quo* of the preliminary assessments.

It is the conclusion of the court that the special assessments levied in this case have not been shown to be in excess of the benefits received, and that the statute under which they have been levied, R. C. 6117.251, is not unconstitutional.

In support of their contention that the commissioners have abused their discretion in their resolution to build their own waste water treatment plant, plaintiffs point out that the commissioners themselves, the county sanitary engineer and the representative of Burgess & Niple, the consulting engineers, all admitted a preference for the alternative of using the plant of the city of Ashtabula. They note, also, that the firm of H. F. Ludwig & Associates, hired by the city of Ashtabula to prepare a Master Sewer Plan for the city, recommended a regional waste water management system as the most effective method of water pollution control, and that it would bring significant monetary savings to the suburban areas including Sewer District No. 2. Counsel for plaintiffs observe that not one witness testified in favor of the alternative of building the treatment plant as being preferable to the alternative of joining the

city's system. They conclude that the commissioners did not make any attempt to obtain permission to connect with the city's treatment plant, and that their failure to adopt the admittedly preferable alternative amounted to a gross abuse of discretion.

A court will not substitute its judgment for that of a legislative body in passing upon the validity of legislative action to carry on public improvements except upon a showing of fraud or gross abuse of discretion. *Grisanti* v. *City of Cleveland* (C. A., Cuyahoga, 1962), 89 Ohio Law Abs. 1, app. dism. 173 Ohio St. 386 (1962), 372 U. S. 68, 9 L. Ed. 2d 119 (1962). Abuse of discretion implies not merely error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. *State, ex rel. Shafer,* v. *Ohio Turnpike Commission* (1953), 159 Ohio St. 581.

As contended by plaintiffs, the evidence in this case unanimously supports the preferability of utilizing the city's half-idle treatment plant rather than building additional capacity in the outlying township in order to solve the latter's sewerage problem. Nobody testified to a preference for the alternative of building the new suburban plant, and it is hard to see how any knowledgeable person reasonably could. Yet the defendant county commissioners do not have it within their own power or authority to bring about this preferable solution. It must be accomplished by the cooperation of the officials of the city over whom the commissioners have no authority or control. If the city officials believe it to be best for the people of the city of Ashtabula and District No. 2 to require annexation as a prerequisite to treating District No. 2's sewage, in order to extend the advantages of city management to all other functions of local government along with waste water treatment, how can the commissioners be charged with "perversity of will, passion, prejudice or partiality" because of this judgment? If annexation be the requirement for the joint county-city project, how can the commissioners be faulted for the refusal of the people in the district to agree to such annexation?

Plaintiffs argue in effect that had the commissioners tried harder, or been more aggressive, they could have persuaded the Ashtabula city officials to agree to treat the district sewage without annexation. This leaves too much to speculation and conjecture, and involves policy and legislative wisdom rather than legal propriety. The commissioners never had before them the unqualified offer of the city to cooperate in the joint project. Consequently, they cannot be charged with an abuse of their discretion in not pursuing a course that was not clearly open to them.

In determining to carry out the orders of the Ohio Water Pollution Control Board and to prevent further pollution in District No. 2, the commissioners followed a method recommended by reliable and experienced consulting engineers. It has not been shown by the plaintiffs in this case that the commissioners had any other workable choice. That the city's own consulting engineers strongly recommended a regional plan for sewage treatment did not, without official action from the city, enable the commissioners to take advantage of the city's facilities. And although it seems highly regrettable that the many economic and other advantages of regional development by annexation or otherwise, have not been realized upon this opportune occasion in solving the sewage treatment problems of District No. 2, the question in these cases is whether the commissioners of Ashtabula County have abused their discretion in determining to build their own waste water treatment plant. It is the conclusion of the court that they have not.

Accordingly, the finding of the court is for the improvement, which is necessary for the public health, convenience and welfare, and for the validity of the special assessments herein appealed from.

*Judgment accordingly.*